UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLIN SHOUMOUN-NEJAD, | Case No.: 5:10-CV-5264-EJD |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMNET; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security | |
| Defendant. | |

**I.      Introduction**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain review of the Social Security Administration's final decision denying his claim for disability benefits. Plaintiff seeks an order reversing the final decision of the Administration and awarding benefits, or in the alternative, a remand for further administrative proceedings.

Presently before the court are Plaintiff Carlin Shoumoun-Nejad's ("Plaintiff") and Defendant the Commissioner of the Social Security Administration's ("Defendant") cross-motions for summary judgment.  Having considered the parties' submissions and the administrative record, the court GRANTS Defendant's Motion for Summary Judgment, and DENIES Plaintiff's Motion for Summary Judgment.

1

## II.   Background

### A.  Procedural History

In February 2008, Plaintiff filed for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social Security Act. Administrative Transcript ("Tr.") at 117-24, 125-28.  These claims were denied.  Tr. at 52. Plaintiff filed a Request for Reconsideration, which was also denied (Tr. at 57).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and his matter was heard before ALJ Teresa Hoskins-Hart on December 7, 2009. Tr. at 41-47.  ALJ Hoskins-Hart issued an unfavorable decision on December 21, 2009, finding that though Plaintiff had a severe combination of medical impairments, that he was nevertheless capable of performing medium work, including his past relevant work.  Tr. at 38-46.  Plaintiff sought review of the ALJ determination from the Appeals Council, but was denied.  Tr. at 6.  Plaintiff then commenced this action for judicial review of the ALJ determination.

### B.  Plaintiff's Age and Educational, Vocational, and Medical History

Plaintiff was born on July 4, 1971 in Tehran, Iran.  Tr. at 129.  At the alleged disability onset date of November 7, 2007, Plaintiff was thirty-six years old.  See Tr. at 152.  Plaintiff attended school through his senior year in high school, but did not graduate.  Tr. at 23.  He had previously been employed as a courier for ten years (Tr. at 19), and also as a cashier, a cook and a construction handyman (Tr. at 19-21).

Plaintiff has been diagnosed with GERD and Familial Mediterranean Fever ("FMF"). Every few months Plaintiff suffers gastrointestinal symptoms such as abdominal pain, nausea, and vomiting as a result of these conditions.  See Tr. at 25.  He smokes marijuana to help revive his appetite during flares of his condition.  Tr. at 27.

Since his alleged disability onset date, Plaintiff has sought treatment for these gastrointestinal complaints on at least the following occasions:

On December 4, 2007, Plaintiff sought treatment from Dr. Simin Siddiq for abdominal cramps and vomiting.  Tr. at 244.  Dr. Siddiq found that Plaintiff had stress and anxiety and

2

Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

prescribed him Librium. Tr. at 246. About a month later, in January 2008, Plaintiff reported to Santa Clara Valley Medical Center with heartburn and was given medication. Tr. at 251.

In June 2008, Plaintiff received a comprehensive internal medicine evaluation from Dr. Frank Chen. Tr. at 252-258. Dr. Chen noted Plaintiff's symptoms of stomach pain and heartburn, but recorded that the Plaintiff can perform daily activities and work an eight-hour day without restrictions other than that Plaintiff could lift and carry 50 pounds frequently, and 100 pounds occasionally. Tr. at 254. That same month Plaintiff underwent a complete psychiatric exam by Dr. Antoinette Acenas. Tr. at 256-59. Dr. Acenas found the Plaintiff to be "mildly depressed" as a result of his physical condition, but determined that, based on his mental capabilities only, Plaintiff would be able "to perform work activities on a consistent basis and maintain regular attendance in the workplace as well as complete a normal workweek." Tr. at 257-58.

On July 13, 2008, Plaintiff again visited Santa Clara Valley Medical Center with gastrointestinal trouble. Tr. at 279. He was diagnosed with acute renal failure, dehydration, and gastroenteritis. Id. The next day, Plaintiff left the medical center against medical advice. Tr. at 294. The medical center's physicians' diagnosis was vomiting due to marijuana use. Id. In December 2008 Plaintiff returned to the medical center and was diagnosed with pancreatitis. Tr. at 276. This time, the Center referred him to the GI outpatient clinic. Id.

About four months later, in April 2009, Plaintiff visited the GI outpatient clinic at the Santa Clara Valley Medical Center. Tr. at 319. Dr. Ahmed Kamal examined Plaintiff and suspected Familial Mediterranean Fever ("FMF"), a genetic condition, due to Plaintiff's symptoms and ethnicity. Tr. at 321. Plaintiff underwent genetic testing with Dr. Robert Wallerstein, who determined he was in fact a carrier of FMF. Tr. at 309. At a follow-up visit, Plaintiff told Dr. Kamal that he had experienced symptoms for fifteen years at a frequency of every few months. Tr. at 306. Dr. Kamal prescribed colchicine, the medication which treats FMF. Tr. at 307. When Plaintiff returned to the clinic in September 2009, he reported that he took colchicine for eight days, but then stopped because he was feeling worse. Tr. at 301. Plaintiff reported that he still was getting attacks of pain but did not at the time have nausea, vomiting, or weight loss. Id. He was

3
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

unable to state how frequently the episodes occurred. Id. Dr. Kamal advised Plaintiff to re-try the colchicine. Tr. at 302.

In February 2010, Plaintiff reported to Kaiser Permanente Santa Teresa Hospital with abdominal pain, nausea and vomiting he said had been going on for six days, as well was a chronic cough. Tr. at 329. The examining doctor determined that Plaintiff presented with renal failure and "marked leukocytosis." Tr. at 360. The day after he was admitted, Plaintiff was "returning to normal" with the help of "IV fluids, CR and Hgb." Tr. at 360. The next day, he was discharged with pain and nausea medications. Tr. at 344.

In March 2010, Plaintiff returned to the GI Clinic with abdominal pain. Tr. at 372. Dr. Zand, an OB/GYN, examined Plaintiff, increased his colchicine dosage to .6 mg three times daily, and referred him back to the Santa Clara Valley Medical Center. Tr. at 376-77.

### III.     Legal Standard

This court has authority to review an ALJ decision under 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Id. The Court's jurisdiction is thus limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. *Id.* Plaintiff's argument that this court has any greater authority is without basis.

A district court may only reverse the ALJ decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; accord Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). "Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Court must uphold the ALJ's conclusion if it is one of several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

4
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## IV. Discussion

### A. Disability Evaluation Under the Social Security Act

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given his or her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). "The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing that he or she can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Id.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920.

1) At step one, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

2) At step two, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

3) At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. §§ 20 C.F.R. § 404.1520(d), 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

4) Prior to step four, the ALJ must determine the claimant's residual functional capacity. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

5) At step five, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**B. The ALJ's Determination**

In this case, the ALJ found that 1) Plaintiff had not engaged in substantial gainful employment since the alleged onset date of November 7, 2007; 2) Plaintiff's FMF and GERD constituted a severe combination of impairments; 3) Plaintiff's combination of impairments did not meet or equal on the listed impairments; and 4) Plaintiff has a residual functional capacity to perform the full range of medium work, and is capable of performing past relevant work. Tr. at 43-46. In accordance with these findings, the ALJ determined that Plaintiff is not disabled. Tr. at 46.

In making the determination that Plaintiff has the residual functional capacity to perform medium work, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." Tr. at 44. In considering the Plaintiff's symptoms, the ALJ engaged in a required two-step process. That process requires the ALJ to first determine that Plaintiff's combination of impairments could reasonably be expected to cause Plaintiff's alleged symptoms, and second to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit his ability to do basic work activities. Tr. at 45. To the extent that statements regarding the alleged symptoms are not substantiated by objective medical evidence, the ALJ must make a

6
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

finding on credibility based on a consideration of the entire case record. Tr. at 45.

In this case, the ALJ readily concluded that Plaintiff's GERD and FMF could reasonably be expected to cause his symptoms. However, to the extent that Plaintiff's statements regarding his symptoms were inconsistent with the results of the residual functional capacity assessment, the ALJ found those statements to not be credible. Each of Plaintiff's arguments focuses on the ALJ's weighing of the evidence during this second step of the residual functional capacity analysis.

### 1. Evidence Supporting the ALJ's Evaluation of Dr. Wallerstein's Statement

In response to a questionnaire sent to him by the ALJ, Dr. Wallerstein, the physician who performed Plaintiff's genetic testing and diagnosed him with FMF, wrote that Plaintiff is precluded from "any and all full-time work" because of his chronic pain. Tr. at 326-27. Plaintiff disputes the ALJ's decision to "accord little weight to the December 2009 opinion of Dr. Wallerstein." Tr. at 45. The Social Security Commissioner has instructed that an ALJ give a treating physician's opinion on the nature and severity of an individual's impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the individual's record]." 20 C.F.R. § 404.1527(c)(2). However, a medical source opinion as to the ultimate conclusion that an individual is disabled or unable to work is not dispositive. 20 C.F.R. § 404.1527(d)(1). Instead, that determination is reserved to the Commissioner, who will review "all of the medical findings and other evidence that support a medical source's statement that [an individual is disabled]." Id. Here, the ALJ gave "little weight" to Dr. Wallerstein's statement because he saw the Plaintiff only twice and because the statement was not consistent with or well-supported by the record as a whole. Tr. at 45.

#### a. Length of Treatment Relationship

The length a patient's treatment relationship with a physician and the frequency of examination can impact the amount of weight an ALJ will give to statements from that physician. 20 C.F.R. § 404.1527(c)(2)(i). Plaintiff's short relationship history with Dr. Wallerstein supports the ALJ's findings. Plaintiff's first visit to Dr. Wallerstein entailed genetic evaluation and testing.

7
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Tr. at 309.  During Plaintiff's second visit, a follow up, Dr. Wallerstein explained FMF to the plaintiff in generic terms, and discussed whether Plaintiff's daughter should be tested for the disease. Tr. at 304.  Those two visits were the only interaction between Dr. Wallerstein and the Plaintiff.  In addition, Dr. Wallerstein's own reports indicate that he and Plaintiff were not in an ongoing treatment relationship.  Dr. Wallerstein's initial report, which was directed to Dr. Kamal, referred to Plaintiff as "your" patient.  Tr. at 309.  Furthermore, the report from the second visit reflects that Dr. Wallerstein did not schedule any follow-up visit with Plaintiff, but instead referred him back to Dr. Kamal for any necessary follow-up.  Tr. at 305.  This evidence supports the ALJ's decision to give little weight to Dr. Wallerstein's statement, as it demonstrates that Dr. Wallerstein did not have an ongoing treatment relationship with Plaintiff.

### b. Dr. Wallerstein's Statement Conflicts with the Evidence in the Record

Dr. Wallerstein's questionnaire response described Plaintiff as being "unable to work." However, he did not include any detailed information regarding Plaintiff's symptoms, treatment, and ability to perform specific job-related activities.  The ALJ weighed this unsupported statement against the more robust evidence elsewhere in the record and found that Dr. Wallerstein's statement was not supported by the evidence.  FMF can be treated with the medication colchicine. Plaintiff was prescribed that medication on several occasions, but has not taken it regularly at the prescribed dosage. Tr. at 302, 307, 373.   Additionally, Plaintiff's condition appears to be episodic.  When Plaintiff does have an episode, his symptoms appear to resolve with medication within a day or two of seeking treatment.  Tr. at 276, 294, 343.  Dr. Wallerstein's questionnaire answer did not address any of these concerns.  This conflicting evidence, along with the short relationship history between Dr. Wallerstein and Plaintiff, substantially supports the ALJ's decision.   The ALJ thus did not err in affording Dr. Wallerstein's statement only "little weight."

### 2. Evidence Supporting the ALJ's Evaluation of Plaintiff's Statements

At the ALJ hearing, the Plaintiff testified that he had episodes of illness which presented as fever, sweats, abdominal pain, nausea, and vomiting. Tr. at 25.  According to Plaintiff, these

8
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

episodes occur three to four times a year. Tr. at 158. Plaintiff argues that his statements about his symptoms support his assertion that he is unable to sustain full-time work, and that the ALJ erred in assessing the credibility of his statements.

An ALJ is required to make specific credibility findings which "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p. In making the credibility analysis, "the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Id.

This court's review of the ALJ's decision regarding credibility determinations is limited. See Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). The ALJ's assessment of a claimant's credibility must be "properly supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell v. Sullivan, 947 F.2d 341, 345–346 (9th Cir. 1995) (quoting Elam v. Railroad Retirement Bd. 921 F.2d 1210, 1213–14 (11th Cir. 1991) (quotations omitted)). Absent affirmative evidence of malingering, an ALJ may not discount a claimant's testimony without clear and convincing reasons. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). However, the court must give deference to the ALJ's assessment of a plaintiff's credibility if it is supported by the record and applicable legal standards. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing Reddick, 157 F.3d at 720).

The ALJ found Plaintiff's subjective description of his symptoms to be less than fully credible due to a number of inconsistencies in the record. The ALJ is permitted to consider contradictions between relevant medical evidence and plaintiff's testimony in a credibility

assessment. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)  First, the ALJ considered that Plaintiff alleged a 15-20 year history of these symptoms, but did not provide documentation of any treatment for these symptoms prior to his alleged onset date and had "worked with the condition for many years with no documented medical complaints or treatment."  Tr. at 45-46; see also Tr. at 161 (detailing Plaintiff's work history from June 1997 to November 2006).  The ALJ also noted that since his diagnosis, Plaintiff had not received any "significant medical therapy" for FMF.  Tr. at 45.  Second, the ALJ looked at the fact that while Plaintiff had been prescribed colchicine to treat his FMF, he had exhibited issues with compliance. Tr. at 45, 301, 302, 360-61.  Third, the ALJ considered that even after the alleged on-set date, Plaintiff held himself out as capable of work in order to collect unemployment benefits.  Tr. at 46.  Fourth, the ALJ considered the differences in Plaintiff's and his sister's statements about Plaintiff's abilities, and the descriptions of Plaintiff's daily activities in the consultative examination reports.  While Plaintiff and his sister stated that Plaintiff is heavily dependent on others and cannot perform daily activities on his own, Plaintiff's consultative examination reports describe Plaintiff as functional, and able to engage in socializing and daily activities.  Tr. at 46.  Finally, the ALJ considered the fact that Plaintiff had not always behaved as if his symptoms were quite so severe.  During one hospitalization, the examining physicians found him taking a shower, and then on the day of his anticipated discharge, Plaintiff left the hospital against medical advice without receiving advice as to the source of his symptoms.  Tr. at 294.

        Plaintiff correctly points out that some countervailing evidence does exist in the record.  For instance, in regards to the doctors walking in on Plaintiff in the shower during his July 2008 hospitalization, elsewhere in the record Plaintiff clearly explained that hot showers are the only treatment that aids his symptoms. Tr. at 348. Additionally, though Plaintiff initially only took colchicine for eight days (Tr. at 301), he later started taking one colchicine on a daily basis, though he could not tolerate the recommended dosage of two colchicine a day (Tr. at 360-61).

        Even given this additional evidence, the ALJ's assessment of credibility is still supported by the record as a whole.  Plaintiff's having held himself out as capable of working in order to

1   receive unemployment benefits, his testimony that his illness is episodic and evidence that his
2   symptoms resolve quickly with treatment, the infrequency of follow-up with his treating physician,
3   and the medical reports showing that Plaintiff is capable of performing daily activities all support
4   the ALJ's determination.  Therefore, the court finds that the ALJ provided clear and convincing
5   reasons to reject Plaintiff's testimony. Affording the ALJ's credibility determination the deference
6   to which it is entitled, the court finds no error.

### 3. Evidence Supporting the ALJ's Determination that Plaintiff has the Residual Functional Capacity to Perform Medium Work.

Plaintiff contends that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC") by failing to consider how the episodic nature of Plaintiff's symptoms prevented him from performing continuous work over time.  See Pl. Reply at 2-3, Dkt No.31.  Generally, a claimant will be considered disabled if he or she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (emphasis added).   The continuous twelve month period of impairment requirement can be satisfied with evidence that a claimant's episodic illness prevents him or her from engaging in substantial gainful activity for at least 12 months.  See Gatliff v. Comm'n of Social Sec. Admin., 172 F.3d 690, 694 (finding that "substantial gainful activity" requires that the claimant not only has the ability to find and perform a job, but also has the ability to hold down the job for a significant period of time); see, e.g. Vaughn v. Comm'r, Social Sec. Admin., No. 3:10-cv-930, 2012 WL 28561 at *9 (D.Or. January 4, 2012) (finding that Plaintiff's episodic and debilitating kidney stone pain which resulted in her missing two days of work per month precluded her from performing substantial gainful activity.)  Additionally, if a claimant's impairment forces him to stop work after only a short time, the ALJ will not consider that work evidence of ability to do substantial gainful activity.  See 20 C.F.R. § 404.1574; Social Security Ruling 84-25.

The ALJ considers the claimant's ability to work in performing the RFC analysis.  RFC is

the "most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the record, medical statements concerning what activities the claimant can still perform, descriptions and observations of the claimant's limitations from his or her impairments, provided by the claimant and those close to the claimant. 20 C.F.R. § 404.1545(a)(3). The ALJ also assesses the claimant's physical, mental, sensory, and other abilities. Id.

Plaintiff argues that his RFC decreases when he experiences an episode of illness, and that as a result his illness interferes with continuous employment. Plaintiff thus contends that the ALJ erred by assigning him one blanket RFC instead of considering that he may operate at different RFCs at different times. Here, as discussed in previous sections, the ALJ properly considered and weighed statements from Dr. Wallerstein, Plaintiff, and his sister regarding his ability to work. The ALJ also considered Plaintiff's medical record including Dr. Chen's and Dr. Acenas's reports which both affirmed that Plaintiff could still perform a significant range of work activities. Tr. at 44, 46, 254, 258. Having considered this evidence, the ALJ found a "lack of objective manifestation of impairment on a systemic level" and determined that Plaintiff had an RFC to perform medium work, and could perform his former relevant work. Plaintiff's argument suggests a misunderstanding of the RFC analysis. The ALJ determines a claimant's RFC based on all of the statements and evidence regarding Plaintiff's abilities and limitations. The inability to work for a significant period of time would be considered a limitation on Plaintiff's abilities. There is no evidence here that suggests that the ALJ failed to understand that Plaintiff's illness was episodic in nature, or that his ability to maintain employment is inherently included in the RFC analysis. To the contrary, the ALJ suggested that the Plaintiff could only perform "medium work" because of the episodic nature of his condition. Tr. at 45. The ALJ thus did not err in assigning Plaintiff a medium residual functional capacity.

V. **Conclusion**

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

12
Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The clerk shall CLOSE this matter.

**IT IS SO ORDERED.**

Dated: September 28, 2012

                                        _____
EDWARD J. DAVILA
United States District Judge

13

Case No.: 5:10-CV-5264-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT